IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID MAYNARD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. _____ |
| | § | |
| McDONALD'S RESTAURANTS OF TEXAS, INC., | § | |
| | § | |
| Defendant. | § | JURY TRIAL DEMANDED |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, David Maynard ("Maynard" or "Plaintiff"), Plaintiff in the above-styled and numbered cause, and files this Plaintiff's Original Complaint, complaining of McDonald's Restaurants of Texas, Inc. ("McDonald's" or "Defendant"), and for cause of action would show as follows:

**I.**
**INTRODUCTION**

1. This action seeks front pay, back pay, equitable relief, compensatory and punitive damages, attorneys' fees, expert witness fees, taxable costs of court, and pre-judgment and post-judgment interest for sex discrimination and retaliation suffered by Maynard in the course of his employment with McDonald's. Maynard complains that he was discriminated against regarding the terms and conditions of his employment because of his sex, and further, that he was retaliated against because he complained of sex discrimination. Maynard demands a jury on all issues triable to a jury.

## II.
### PARTIES

2. Plaintiff David Maynard is a permanent resident of the United States and is currently a resident of Houston, Texas.

3. Defendant McDonald's Restaurants of Texas, Inc. is a Texas for-profit corporation, authorized to do and conducting business in the State of Texas. Defendant may be served with process by serving its registered agent, The Prentice Hall Corp., at 211 E. 7th Street, Suite 620, Austin, Texas 78201-3218, or wherever the agent may be found.

## III.
### JURISDICTION AND VENUE

4. This action is brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-1, *et seq.*, and the Civil Rights Act of 1991.

5. This Court has jurisdiction over all claims in this action. The amount in controversy is within the jurisdictional limits of this Court.

6. Venue is proper in the Southern District of Texas–Houston Division under 28 U.S.C. § 1391(b), since a substantial part of the events giving rise to this cause of action occurred in the Southern District of Texas–Houston Division. Furthermore, this action arises under the laws of the United States.

## IV.
### PROCEDURAL REQUISITES

7. Maynard filed a Charge of Discrimination ("Charge") against Defendant under Charge Number 460-2011-04065 with the Houston District Office of the Equal Employment Opportunity Commission ("EEOC") on or about September 21, 2011. In his Charge, Maynard claimed that Defendant discriminated against him because of his sex, and further, that Defendant retaliated against him after he complained of sex discrimination..

8. On March 26, 2013, the EEOC issued a Notice of Right to Sue letter, entitling Maynard to file an action in this Court.

9. The filing of this lawsuit has been accomplished within ninety (90) days of Maynard's receipt of the Notice of Right to Sue letter.

10. All conditions precedent to filing this lawsuit have been met.

## V.
### FACTS

11. Maynard began his employment with McDonald's in or about August 2010 as a Manager in Training at the McDonald's store located on FM 1960 in Houston, Texas. McDonald's subsequently relocated Maynard to the McDonald's store located on Rankin Road in Houston in or about mid-September 2010.

12. Within weeks of being transferred to the Rankin Road store, Maynard's immediate supervisor, Store Manager Wanda Collins, began sexually harassing him. As Maynard explained in painstaking detail to representatives of McDonald's Human Resources in Houston, some specific examples of Ms. Collins' inappropriate and unlawful behavior included, but were not limited to, the following: Ms. Collins asked Maynard what his shoe size was, indicating that "the bigger your feet, the bigger that thing you got hanging down there," as she stared at Maynard's crotch; she informed Maynard: "Here's my phone number; you can call me anytime, anywhere, for anything you want. Let me know. You hear me?"; and she indicated that "even though that [presumably a reference to Maynard's penis] may be a nine-inch, it still isn't enough; you will need to come better than that, but don't worry; I could work with what you got."

13. In addition, on one occasion, Ms. Collins returned from the restroom with three buttons of her blouse unbuttoned and proceeded to lean over so that Maynard could see her (bra-less) breasts. Ms. Collins informed Maynard that she could "make [Maynard's] career, so choose

3

wisely." On another occasion, Ms. Collins asked Maynard when she would get a "return on [her] investment," and when Maynard asked whether he was working hard enough or learning fast enough, Ms. Collins indicated that he was, but that that was for McDonald's, and not for her.

14. On yet another occasion, Ms. Collins informed Maynard that she had given him Sundays and many weekends off, then asked, "Do you think that was for free? Again, when will I get a return on my investment?" Moreover, Ms. Collins asked Maynard when he was going to arrange a time for the two of them to "get together" when her husband was working overnight. When Maynard explained that he had a wife and children, Ms. Collins explained that Maynard was "playing with [her] affections and with fire; you are also playing with your future at McDonald's."

15. In or about December 2010, Ms. Collins explicitly propositioned Maynard for sex, telling him, "Don't worry; I will drop it like it's hot." Ms. Collins further informed Maynard that he could stay in her good graces by paying her cash for her "kindness" (e.g., giving Maynard specific days off), and that she was a "power broker," doing what she wants. All such conduct was unwelcome by Maynard, and he repeatedly expressed same to Ms. Collins, rejecting all advances made by her.

16. In late January or early February 2011, Maynard informed District Manager Brian "Keith" Sizemore that he needed to speak with him about Ms. Collins. Maynard then elaborated that there was inappropriate behavior, and that "pay for play" was taking place. Mr. Sizemore responded that he would speak with Maynard when he got time. Approximately three (3) days later, while Mr. Sizemore was at the Rankin Road store, having received no follow-up from Mr. Sizemore, Maynard once again approached Mr. Sizemore and told him that he needed to speak with him. Maynard explained that there was a "sex thing going on here." In response, Mr. Sizemore laughed. When

Maynard expressed that the situation was not humorous, Mr. Sizemore remarked: "That's your problem; you're too serious."

17.     In or about mid-February 2011, Maynard attended a managers' meeting at the McDonald's corporate office located on FM 1960 in Houston. In addition to various store managers, in attendance at the meeting were Tamika (last name unknown) from McDonald's Human Resources, as well as Ms. Collins. During a break at the meeting, Maynard approached Tamika and informed her that it "seems like Wanda wants something from me." Tamika responded by asking Maynard: "Does that mean what I think it means?" Maynard indicated that it did in fact mean that, and Maynard then asked Tamika for her telephone number, so that he could speak to her in more detail in privacy. Almost immediately after Maynard spoke with Tamika at the meeting, Ms. Collins approached Maynard and inquired about the topic of his conversation with Tamika. Maynard responded that they were discussing his paycheck and pay structure. In response, Ms. Collins said, "Remember, I have been with the company for over 20 years. So who do you think Tamika will believe: you or me? I know these people."

18.     Over the next few days, Maynard attempted to reach Tamika several times to discuss the specific concerns he had about Ms. Collins and her inappropriate behavior. Tamika did not call Maynard back. However, later that day, on or about February 24, 2011, Mr. Sizemore arrived at the Rankin Road store and, based on information provided to him by Ms. Collins, terminated Maynard's employment, claiming it "didn't work out."

19.     Following his termination, Maynard once again attempted to reach Tamika. Although he left her five (5) voice mail messages on the day he was terminated, Tamika did not call Maynard back. The following day, Maynard left Tamika another voice mail, letting her know that he was going to see an attorney regarding his termination. Within 20 minutes, Tamika called

5

Maynard, informing him that he had not been fired; that he was still "in the system"; but that if he met with an attorney, he would be fired. Maynard then explained the specific behavior Ms. Collins had exhibited. Tamika asked Maynard to meet with her at the corporate office on Monday, February 28, 2011, reiterating that if Maynard met with an attorney, he would be terminated.

20. On February 28, Maynard and his wife met with Tamika and another representative (name unknown) of McDonald's at the corporate office. Tamika asked Maynard what happened, and he once again explained the behavior he had been subjected to by Ms. Collins. Maynard also presented Tamika with a copy of a document entitled "To Whom It May Concern 1/11/2011," which specifically set forth Ms. Collins' deplorable actions. After Maynard recounted the events, Tamika laughed and informed him that he did not "have anything." She then sarcastically told Maynard that when he "[brought] the tape, we'll talk about it." With that, Tamika informed Maynard that he was terminated, and she got up and walked out of the room.

21. On or about September 21, 2011, Maynard filed his Charge of Discrimination with the EEOC, complaining of discrimination based on his sex, as well as retaliation.

22. On or about August 1, 2012, the EEOC issued a Letter of Determination ("LOD"). In its LOD, the EEOC found:

> Examination of the evidence reveals that Charging Party was hired in September, 2010 as a Manager Trainee at Respondent's store at FM 1960 in Houston. In January, 2011, he was transferred to the Rankin Road store where he was supervised by Wanda Collins, Restaurant Manager. The investigation establishes that Charging Party was subjected to sexual harassment by Collins from around January, 2011 until his termination on February 23, 2011. Collins made sexually explicit comments and unwelcome advances to the Charging Party, trying to date him. She propositioned him for sex, made sexual comments about his private parts, and made sexually suggestive comments that she was rewarding him with days off as an "investment." Charging Party rejected Collins' advances but was terminated on February 23, 2011.

>Based upon the investigation, the Commission concludes that the evidence establishes violations of Title VII. The evidence establishes that Respondent is vicariously liable for sexual harassment perpetrated by Respondent's Restaurant Manager Collins.

## VI.
## SEX DISCRIMINATION UNDER TITLE VII

23. Maynard incorporates by reference all of the foregoing allegations in each of the paragraphs above as fully set forth herein.

24. McDonald's actions violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.*, for violation of Maynard's equal right to be free from gender-based discrimination, including sexual harassment. For all of the reasons enumerated in ¶¶ 11-22, McDonald's is liable for the sexual harassment of Maynard, to wit: he was subjected to gender-based discrimination via a hostile work environment and has suffered severe emotional distress and lost wages as a result of the harassment.

25. Further, McDonald's acted with malice or, in the alternative, with reckless indifference to the federally protected rights of Maynard.

## VII.
## RETALIATION UNDER TITLE VII

26. Maynard incorporates by reference all of the foregoing allegations in each of the paragraphs above as fully set forth herein.

27. McDonald's discriminated against Maynard because he opposed a practice made an unlawful employment practice by 42 U.S.C. Chapter 21, Subchapter VI, and/or because he made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under 42 U.S.C. Chapter 21, Subchapter VI. 42 U.S.C. § 2000e-3(a), to wit: Maynard complained

that he was subjected to gender-based discrimination via a hostile work environment, and after doing so, McDonald's terminated his employment.

28. As a result of McDonald's intentional, discriminatory, and unlawful acts described above, Maynard has suffered and continues to suffer mental anguish, humiliation, emotional distress, and damage to his professional reputation, all to his detriment and compensable at law. Maynard also sues for the recovery of punitive damages as authorized by statute.

## VIII.
### DAMAGES

29. As a result of McDonald's conduct, Maynard seeks the following relief: (1) back pay; (2) front pay; (3) loss of benefits in the past and the future; (4) costs of court and attorneys' fees; (5) mental anguish and emotional distress in the past and future; and (6) compensatory damages.

30. Additionally, since McDonald's actions were committed maliciously, willfully, or with reckless indifference to Maynard's federally protected rights, Maynard is entitled to recover punitive, liquidated, and/or exemplary damages in an amount sufficient to deter McDonald's and others similarly situated from this conduct in the future.

## IX.
### JURY DEMAND

31. Maynard requests a trial by jury on issues triable by a jury in this case.

## X.
### PRAYER

WHEREFORE, Plaintiff David Maynard respectfully prays that upon final trial hereof, this Court grant him: appropriate back pay, including, but not limited to, his salary and benefits; reinstatement, or if reinstatement is deemed not feasible, front pay; mental anguish and emotional distress in the past and the future; compensatory damages; punitive damages as allowed by law;

reasonable attorneys' fees both for the trial of this cause and any and all appeals as may be necessary; all expert witness fees incurred in the preparation and prosecution of this action; pre-judgment and post-judgment interest as allowed by law; taxable court costs; and any such additional and further relief that this Court may deem just and proper.

    Respectfully submitted,

    **SHELLIST | LAZARZ | SLOBIN LLP**

    By: */s/ Daryl J. Sinkule*
       DARYL J. SINKULE
       State Bar No. 24037502
       Federal ID No. 34842
       MARTIN A. SHELLIST
       State Bar No. 00786487
       Federal ID No. 16456
       11 Greenway Plaza, Suite 1515
       Houston, Texas  77046
       Telephone: (713) 621-2277
       Facsimile: (713) 621-0993

       **ATTORNEYS FOR PLAINTIFF**
       **DAVID MAYNARD**